WALKER & WIFE
vs.
McKNIGHT.

---

## Walker and Wife *vs.* McKnight.

### APPEAL FROM M'CRACKEN CIRCUIT.

CHANCERY.

Case 50.

1. A purchaser of land at sheriff's sale, under his own execution, cannot be compelled to surrender his purchase and legal title under that purchase, in favor of one holding a bond for title to the land unless he had notice of the existence of such bond before his purchase.

2. A party to the record of a suit in chancery, who is responsible for costs, is not a competent witness for other parties on the same side.

3. Sales of land under execution by a sheriff have been held to be void only in cases where there was no judgment to sustain the execution, or where the officer exceeded his authority, by selling more land than was required for the payment of the amount due upon the execution. It has not been adjudged that a sale is void be-

cause a part of the debt had been paid which was not endorsed upon the execution.

4. The execution under which a sheriff made a sale of land was not returned. The only evidence of the amount required to be made by the execution was the recitals in the sheriff's deed to the purchaser, which not showing that the sheriff sold the land for a sum exceeding the amount which he was authorized to make. Held—that the sale was not void.

5. The return of a sheriff upon an execution that he had made money upon the execution, and paid it to the plaintiff, is not evidence of the fact of payment, or of the time of its payment, not being in response to any command of the writ.

6. A plaintiff in execution purchased a tract of land under execution; the sale was made for a greater sum than was necessary to pay the balance due upon the judgment. Held—that the plaintiff in equity should be regarded as holding the excess of the land which was not necessary to satisfy the sum due on the judgment in trust for the benefit of one who held an equity in the land sold.

Case stated.

In 1837, Robert Thurston and wife, and Mary S. Searcy, claiming to be the only heirs-at-law of Edmund Searcy, deceased, filed their bill in chancery against Virgil McKnight and Ann C. Logan, executrix of John Logan, deceased, to compel a conveyance of the legal title to one-seventh part of a tract of ten thousand acres of land, lying in McCracken county, which had been conveyed to Benjamin Logan, deceased, the father of said John, and which had descended to his heirs. They allege that, in 1821, John Logan executed his bond to Edmund Searcy, by which he bound himself "to cause to be conveyed by one of the legates of my father, by general warranty to Edmund Searcy or his assigns, one undivided seventh part of a tract of ten thousand acres of land," &c. That Searcy departed this life without ever having received a conveyance for said land. That Maria Thurston and Mary S. Searcy are his only children and heirs-at-law, and that Maria had intermarried with Robert Thurston. That John Logan had also died, leaving a will by which his wife, Ann C. Logan, was appointed his executrix, and thereby authorizing her to make conveyances for all lands for which had given bonds. That the defendant, McKnight, had obtained a judg-

ment against the executrix and heirs of said John Logan, and, under an execution issued upon that judgment had caused the interest of John Logan to be sold, and had become the purchaser himself. That at the time of said purchase McKnight had notice of the claim of complainants, founded on the bond executed in 1821. They pray that McKnight be compelled to relinquish his title to them, acquired under his purchase at the sheriff's sale, and that the heirs of John Logan also convey to the complainants.

McKnight answered, claiming to be the legal owner in virtue of his purchase under execution, and deed of the sheriff, of all the interest of John Logan in the ten thousand acres of land described in the bill, which descended to him from his father. He express-ly denies any notice of complainant's claim prior to his purchase at the sale by the sheriff. He alleges that a decree for partition has been made between the heirs of Benjamin Logan, deceased, and that the portion to which John Logan was entitled has been conveyed to him. He exhibits the sheriff's deed, dated 7th March, 1828, regularly recorded.

In 1841, an amended bill was filed, suggesting the marriage of the complainant, Mary S. Searcy, with Joseph W. Walker. The amended bill was filed in the name of Robert Thurston alone, which suggests the marriage of Walker with Mary S. Searcy, and that a division of the estate of Edmund Searcy had taken place, and that in that division the claim to the land, in contest in this suit, had been assigned to Mary S. Walker, and Walker is made a defendant. In 1842, Walker and wife answered this amended bill of Thurston, and made it a cross-bill against McKnight and the executrix of John Logan, and claim the land in controversy, exhibiting a deed between themselves and Thurston and wife, dated in January, 1841, and stating in detail the grounds relied upon for relief. McKnight, in 1843, answered the cross-bill of Walker and wife, denying every material allegation relied upon for relief. Before the

filing of McKnight's answer, the deposition of the complainant, Robert Thurston, was taken and filed in the case. In 1845, the Circuit Court rendered a decree directing McKnight to release to Walker and wife all his interest in the land in controversy. McKnight prayed an appeal to this court, and this court, in September, 1845, reversed that decree, (not however expressing any opinion upon the merits of the case,) because the heirs of John Logan had not been made parties. It is intimated in the opinion that Thurston was not a competent witness for Walker and wife.

On the return of the case to the Circuit Court, Walker and wife filed an amendment to their cross-bill, making the heirs of John Logan parties to the suit, which McKnight answered, reiterating his former grounds of defense, and referring to the suit in chancery, between Benjamin Logan's heirs, for partition of the ten thousand acres of land, and the execution of deeds in conformity to the decree. On final hearing in the Circuit Court, the cross-bill of Walker and wife was dismissed, and they have appealed to this court.

*Morehead & Brown*, for appellants—

1. The defendant, McKnight, after he had knowledge of the existence of the bond of John Logan in the hands of Searcy's heirs, sold the interest of John Logan in the land, which was called for by the bond under his judgment, for $130, when, in fact, there was only about $96 due upon the judgment. It was originally a judgment for $138 in damages, $11 98 costs, and there had been made on a prior execution thereon $53 53. The whole tract of land was sold for $130, worth $3,000, and being one-third more than due upon the execution. The execution, under which the sale was made, is not in the record. The clerk certifies that *it was delivered to the plaintiff*, McKnight, *and has never been returned*. That the execution immediately preceding is properly indorsed

with a credit of $53 53. This gives assurance that the clerk had properly indorsed the credit on the execution, under which the sale took place, and that the clerk done his duty. It was delivered to McKnight himself. The record shows that he had received the $53 53, collected on the former execution. The sale was made by the sheriff for a greater amount than was due upon the execution, and by the repeated and uniform decisions of this court, the sale was void. (*Knight vs. Applegate* 3 *Monroe*, 388; *Smith vs. Pope's heirs*, B. *Monroe*, 96.)

2. McKnight is charged with notice of the bond of complainants before he made his purchase under execution. True, he denies notice, but it is expressly proved by one witness, and strongly corroborated by circumstances. He married one of the heirs of Benjamin Logan; several of them were parties to the agreement for partition, made in 1825, and the presumption is that he and the family must have known the fact.

3. The effort of appellee to rely upon the consent decree in the case of *Newton vs. Logan's heirs*, cannot avail. 1. Because the heirs of John Logan were not parties to that suit, and cannot be presumed to have assented. (*Grubbs vs. Clay.*) 2. Many of them were infants, and no person was authorized to consent. 3. The first decree for partition, under which McKnight claims to have acquired the legal title, was reversed by this court, and the deed fell with the reversal. (*Clay vs. Marshall's heirs*, 4 *Dana*, 98.) 4. The consent decree was in 1846, after this suit was instituted by Walker and wife, by which McKnight was fully informed of this equity of the complainants, and could not clothe himself with the legal title from John Logan's heirs.

We claim a reversal, and a decree in conformity to the prayer of the bill.

*James Harlan*, for appellees—

Argued—1. McKnight acquired the legal title to the land in controversy, under a sale under execu-

tion and a conveyance by the sheriff, without notice of the covenant of John Logan to convey the land to Searcy, under which complainants, Walker and wife, claim. The testimony of Thurston, the husband of Maria Searcy, and a party complainant, is relied on to prove notice to McKnight. Thurston is incompetent to testify in the case. But, if competent, he stands alone, uncorroborated by any other witness or any circumstances. The fact that McKnight married a daughter of William Logan, and not of Benjamin Logan, does not, in any degree, tend to prove McKnight's knowledge of the acts of John Logan.

2. McKnight recovered a judgment in February, 1827, against John Logan's executrix and heirs, for $138 and costs of suit, and execution issued to sheriff of McCracken, which was levied on the undivided seventh which descended to John Logan in ten thousand acres of land, and McKnight purchased it through an agent, as he says in his answer. The sheriff made a conveyance which was duly recorded, but the validity of this conveyance and the legality of the sale is assailed upon the ground that more land was sold than was necessary to satisfy the execution. The execution, under which the sheriff made the sale, was never returned to the clerk's office, and is not copied into the record, and there is nothing to show the precise amount which the sheriff was required to raise, except the recitals in the deed; these recitals do not show that any credit was indorsed upon the execution, and in the absence of proof, it must be assumed that no credit was indorsed. Therefore, the judgment and sheriff's deed show, *prima facie*, that a legal title passed to McKnight by the sale. This question is not raised by the pleadings in the case, and, therefore cannot avail the complainants.

3. McKnight was invested with the legal title by the deed of the commissioner under the decree in the suit brought for partition by *Newton vs. Logan's heirs*, in 1832. Although that decree was reversed, a sec-

ond decree to the same purport was rendered in 1846, which never has been reversed, and is still in full force. These records are before the court.

4. From the great lapse of time between the date of the bond, in 1821, until suit upon it, and the fact that John Logan listed the land for taxation up to the day of his death in 1826, which Searcy never done, and the fact that no conveyance from Searcy to Crittenden of lots in Versailles can be found of record, all which the record shows—a violent presumption arises that the contract was cancelled, and regarded by all the parties of no binding force, owing, perhaps, to the inability of Searcy to convey the property in Versailles.

An affirmance must follow.

*J. B. Husbands*, on the same side—

1. The McCracken Circuit Court had no jurisdiction of the case. None of the defendants resided in McCracken county. The person of the defendant was necessary, and all that was necessary to confer jurisdiction, which was transitory, not local; (1 *J. J. Marshall, Brown vs. McKee's Reps*, 474 ; *Dunn and wife vs. McMillan*, 1 *Bibb*, 409 ; *Cave vs. Trabue*, 2 *Bibb*, 444 ; 4 *Monroe*, 450 *and* 437,) from all which it appears that the object being only to compel a conveyance, the person was all that was necessary to give jurisdiction, and so far as the bill seeks to set aside the sale of the land by the sheriff, the suit should have been in the court from whence the execution issued. (See 4 *J. J. Marshall*, 407.)

2. The objection to the sale by the sheriff is, that he sold for more money than was due upon the execution. There is nothing in the record showing that such was the fact, or that McKnight knew it. The execution and return is lost; all that is shown upon the record shows regularity. No effort was ever made by Logan's heirs to set aside the sale, but they recognized McKnight's right as early as 1831, when the land was divided and the portion of John

Logan's heirs assigned and deeded to McKnight, and possession taken by him and held ever since.

3. The bond of John Logan to Searcy, bears date in 1821. It is not to convey John Logan's one-seventh of the ten thousand acre tract, but to convey or cause to be conveyed, by one of the legatees of his father, Benj. Logan, one-seventh of said tract of land. McKnight's purchase under execution was in 1828. Edmund Searcy was then living ; John Logan was dead. The bond had no more particular application to John Logan's seventh in the land than to any other seventh. There could be no difficulty in selling his interest to pay his debts. That has been fairly acquired by McKnight. In order to claim a specific conveyance, the land must be set apart, divided, and specifically described, and a clear right to a decree for specific performance must be made out, and nothing unjust or unreasonable appear in the case. It is always in the discretion of the chancellor. (3 *J. J. Marshall*, 546 ; *Ib.* 400 ; 1 *Litt.* 315 ; 5 *Ib.* 81 ; 4 *Monroe.* 567.)

4. If the title bond attached to the particular interest of John Logan, it was but an equity, and if the legal title passed to McKnight without any notice of that equity, as he swears, and upon good consideration, he cannot be required to surrender that legal title. He has an equal equity, and is clothed with the legal title. The question of notice to McKnight of the equity of Searcy then becomes important. Notice is denied in positive terms by McKnight. Robert Thurston, a party to this suit, originally as complainant in right of his wife, this court, when the case was here before, intimated was incompetent. Upon the return of the case to the Circuit Court, Thurston attempts to divest himself of his interest in right of his wife ; this he has failed to do effectually. The relinquishment of the wife is imperfect, not certified to be voluntary, or to have been made on privy examination, and he is still incompetent. (2 *Marshall*, 507 ; 4 *Monroe*, 418 ; 6 *Ib.* 304 ; 1 *Greenleaf's Ev.* 1 *vol.* 400–422.)

The great delay of the complainants in the exhibition of the bond, the fact that Logan always gave the land in for taxation, and Searcy never done so, and no such consideration for the bond being made as suggested; all these circumstances throw a suspicion over the claim, and show the propriety of the decree of the Circuit Court.

Judge SIMPSON delivered the opinion of the Court—                    February 3.

There does not seem to be any valid objection to the equitable right asserted by the complainants to the land in contest. The execution of the bond by John Logan, and of the subsequent agreement of 1825, in which the right of Searcy to one undivided seventh of the land is expressly recognized, is fully established. The bond executed by Logan not only imports a consideration, but the bond on its face states the amount of the consideration, and admits its payment. There is no testimony tending to show that the contract was subsequently rescinded by the parties; and the fact that the bond was not surrendered up creates an opposite presumption. The delay in prosecuting the claim is accounted for by the death of Searcy, in 1827. Besides, his heirs may not have been fully apprized of their rights, or may have supposed that as Logan had not made a deed in his lifetime, that the land was still subject to sale for the payment of his debts. Although, therefore, the claim was permitted to lie dormant for some ten or twelve years, yet it had not, in our opinion, been rendered unavailable by the mere lapse of time, if in other respects it can be sustained against the defendant, McKnight.

If McKnight has acquired the legal title to the land, we do not think that the complainants can compel him to surrender, and convey it to them on the ground that he had notice, before he obtained the title, of the existence of their equitable right to it. He denies, positively, that he had any knowledge or information on the subject, or had ever heard of their

1. A purchaser of land at sheriff's sale, under his own execution, cannot be compelled to surrender his purchase and legal title under that purchase, in favor of one

WALKER & WIFE
*vs.*
McKNIGHT.

holding a bond for title to the land unless he had notice of the existence of such bond before his purchase.

2. A party to the record of a suit in chancery, who is responsible for costs, is not a competent witness for other parties on the same side.

claim. Thurston is the only witness that proves notice, and he is evidently interested in the result, and therefore incompetent. He is one of the original complainants, and therefore liable for the costs of the suit in the event that the complainants do not succeed in the suit. Besides, the release executed by Walker and wife is not executed in such a manner as to be obligatory upon the wife ; and if Walker should die, Thurston would still remain liable to her for contribution, in the event that she failed to recover the land in contest.

Whether McKnight has acquired the legal title, depends upon the validity of the sheriff's sale; for as we have not been furnished with a copy of the proceedings in the suit of Newton and wife against Logan's heirs, after the decree was reversed, and the cause remanded to the Circuit Court, we cannot decide that he obtained any title to it by the decree and proceedings in that case.

The sale made by the sheriff was valid, unless he exceeded his authority in making it. He acts under the execution in his hands, and from it he derives his authority. If he sells more land than is necessary to satisfy the execution, he exceeds his power, and the sale is void. If there be no judgment, or if the execution vary substantially from the judgment, the sale will also be void. But if there be a judgment, and the execution conforms to it substantially, the sale will be valid, although a part of the debt may have been paid, provided the payment does not constitute a part of the judgment, or has not been indorsed upon the execution.

3. Sales of land under execution by a sheriff have been held to be void only on cases where there was no judgment to sustain the execution, or where the officer ex-

An examination of all the cases on this subject will show that sales made by sheriffs have only been held to be void, either where there was no judgment to sustain the execution, or where the officer exceeded his power, by selling more land than was required for the payment of the amount due on the execution. All sales of lands made by sheriffs would be rendered uncertain if the principle were established that the

sale would be void if any part of the debt had been paid, although such payment did not appear upon the execution. No person would be willing to purchase at such a sale, and the operation of the rule would be detrimental instead of advantageous to the defendant in the execution.

The sale under which McKnight claims the land is therefore valid, unless the execution under which it was made had the credit indorsed on it, of the amount made upon a previous execution. The execution under which the sale was made has not been returned, and the transcript of the record of the case in which it issued, does not show whether or not the the credit was indorsed upon it. Nor does that transcript show when the previous execution was returned, nor is there any other evidence upon the subject, so that we cannot say with any certainty that it was returned before the execution upon which the rule was made was issued by the clerk. The only evidence of the amount of the execution, as well as of the sum for which the land was sold, is furnished by the sheriff 's deed to McKnight. The execution as therein recited, does not show that any credit was indorsed upon it, nor is there any testimony that the sheriff sold the land for a sum exceeding the amount he was authorized to make upon the execution. If the presumption that the clerk did his duty when he issued the execution should prevail, it would not avail anything in this case, because a similar presumption arises in favor of the acts of the sheriff. And besides, as already mentioned, it is by no means certain that when the second execution issued, the first one had been returned, although we think it is very probable that it had been.

It does not appear whether the purchase by Mc-Knight was made in person or by agent, nor do we deem it very material, because there is no testimony that proves he had any knowledge at the time of the sale, that part of the judgment had been made upon the previous execution. The statement made by the

WALKER & WIFE
vs.
McKNIGHT.

ceeded his authority, by selling more land than was required for the payment of the amount due upon the execution. It has not been adjudged that a sale is void because a part of the debt had been paid which was not indorsed upon the execution.

4. The execution under which a sheriff made a sale of land was not returned. The only evidence of the amount required to be made by the execution was the recitals in the sheriff's deed to the purchaser, which not showing that the sheriff sold the land for a sum exceeding the amount which he was authorized to make. Held—that the sale was not void.

5. The return of a sheriff upon an execution that he had made money upon the execution, and paid it to the plaintiff, is not ev-

WALKER & WIFE
vs.
McKNIGHT.

idence of the fact of payment, or of the time of its payment, not being in response to any command of the writ.

officer in his return on the execution, that he had paid the money to the plaintiff, not being in response to the command of the writ, is not competent evidence to prove that fact. Besides, the statement itself does not show when the payment was made, and if competent evidence of the fact of payment, would not prove that it had been made before the sale, unless it appeared that the return itself had been previously made.

6. A plaintiff in execution purchased a tract of land under execution; the sale was made for a greater sum than was necessary to pay the balance due upon the judgment. Held— that the plaintiff in equity should be regarded as holding the excess of the land which was not necessary to satisfy the sum due on the judgment in trust for the benefit of one who held an equity in the land sold.

The purchase, therefore, made by McKnight, cannot be deemed void, and the sheriff's deed must be regarded as investing him with the legal title. But the question still occurs, as the sale was made for a sum exceeding the amount actually due to him on the judgment, shall he be permitted to hold the title thus acquired, or will a court of equity set aside and vacate the sale. There can be no doubt that it might have been quashed by the court that had the control of the execution, and the right to regulate the proceedings thereon, if a motion for that purpose had been made in reasonable time. But a court of equity will only interpose and vacate such a sale upon the ground of fraud, or some other equitable ground. In this case we think that the purchaser should be regarded in equity as holding the title in trust for the benefit of the complainants, to so much of the land embraced by the purchase as was not paid for by the balance due on the execution. The price for which the land sold was one hundred and thirty dollars. The amount due upon the execution was ninety-six dollars. For thirty-four one hundred and thirtieths (34-130) of the land purchased, the purchaser did not pay anything. The title to this part of it he should be regarded as holding in trust for the benefit of the complainants. There does not seem to have been any fraud in the transaction, nor is there any other equitable ground upon which the purchaser ought to be deprived of the whole benefit of his purchase.

The land will have to be divided, and 34-130 of it laid off and conveyed to the complainants. In ma-

king the division, the part allotted to the complain-
ants should not include any improvements made by
McKnight, if the division can be thus made without
doing injustice to them.   If a just division cannot be
made without assigning to the complainants part of the
land improved by McKnight, then an account will
have to be taken of the improvements on the part so
allotted to them, according to equitable principles.

Wherefore, the decree dismissing the complainants
bill is deemed erroneous, and is reversed, and cause
remanded for further proceedings, and decree in con-
formity with this opinion.